332

In the Matter of STRATFORD LEASING CORPORATION, Respondent, *v.* HORTENSE W. GABEL, as City Rent and Rehabilitation Administrator, Appellant.

First Department, December 13, 1962.

*Florence R. Zimmerman* of counsel (*Beatrice Shainswit,* attorney), for appellant.

*Philip Hoffer* of counsel (*Joseph Jame,* attorney), for respondent.

*Per Curiam.* This is an appeal by the City Rent Administrator from an order entered July 9, 1962, in an article 78 proceeding annulling a final administrative order which had reduced rentals for failure of the landlord to maintain essential services.

The subject premises, an apartment house, originally contained a locked front door which could be opened from each

apartment by use of an automatic buzzer system. To notify the tenant to release the lock on the front door there was a panel of buttons in the lobby vestibule which when pressed rang a signal bell in one of the 70 apartments in the building. These lobby bells were removed by the landlord in March, 1960 and the panel plastered over. The record discloses that the service of a locked front door had been abandoned many years before the emergency rent control laws were enacted. However, the lobby bell system was maintained and repaired intermittently by the landlord or his predecessor until its removal. The tenants protested in April, 1961.

In annulling the order of the Rent Administrator, Special Term held that the lobby bells were merely a part of the locked front door system. When this service was abandoned prior to the institution of rent control, the lobby bells served no function and their discontinuance did not constitute a diminution of an essential service.

The city rent agency may provide regulations to assure the maintenance of essential services for any housing accommodation. (Administrative Code of City of New York, § Y41–5.0, subd. h, par. [2]; Local Laws, 1962, No. 20 of City of New York, eff. May. 1, 1962, formerly L. 1946, ch. 274, as amd.) Section 22 of the City Rent, Eviction and Rehabilitation Regulations, effective May 1, 1962, requires a landlord to maintain the same essential services as were required to be maintained under the State regulations (formerly State Rent and Eviction Regulations, § 24, as amd. May 4, 1961). For failure to do so the City Administrator may order a decrease in the maximum rent (City Rent, Eviction and Rehabilitation Regulations, § 34.2, eff. May 1, 1962, formerly State Rent and Eviction Regulations of the Temporary State Housing Rent Comm., § 34, subd. 2, as amd. May 4, 1962). It is conceded in the instant case that the landlord is required to furnish the same essential services as it did on March 1, 1950.

The question of what constitutes an essential service is a factual one to be determined by the Rent Administrator. (*Matter of Alas Realty Corp.* v. *Abrams,* 3 A D 2d 842 [2d Dept., 1957].) In an article 78 proceeding the scope of judicial review is limited to a determination of whether there was a reasonable basis for the action of the Administrator (1 N. Y. Jur., Administrative Law, p. 614, § 186), i.e., if there was substantial evidence to support such finding (1 N. Y. Jur., Administrative Law, p. 612, § 185). In the field of rent control certain criteria have been applied to determine what constitutes essential services. Among other things, the general usefulness of the service as to the

everyday living or occupancy of the tenant is considered. The particular or unique use to which the tenant avails himself of a provided service is relevant, as is the question of whether the elimination of the service materially reduces the value of the demised premise. Finally, whether the service was actually contemplated or bargained for at the time of entering the premise or signing the lease is often determinative. Thus, the elimination of doormen (*Matter of Jerlan Holding Corp.* v. *McGoldrick,* 281 App. Div. 545; *Matter of R. E. Associates* v. *McGoldrick,* 282 App. Div. 1043, affd. 308 N. Y. 710); the elimination of awnings and window screens (*Sanfred Realty Corp.* v. *McGoldrick,* Supreme Ct., Kings County, N. Y. L. J., May 24, 1954, p. 11, col. 3; *Strand Management* v. *Herman,* Supreme Ct., N. Y. County, N. Y. L. J., May 4, 1962, p. 14, col. 5); the failure to spray venetian blinds (*Matter of Alas Realty Corp.* v. *Abrams, supra*); the failure to replace a broken door of a refrigerator compartment (*393 Stone Ave. Corp.* v. *Herman,* Supreme Ct., Kings County, N. Y. L. J., May 18, 1960, p. 14, col. 7); the elimination of clothes lines (*Matter of Driver* [*Herman*], Supreme Ct., Queens County, N. Y. L. J., Feb. 1, 1962, p. 14, col. 8); and the elimination of a terrace (*50 West Park Corp.* [*Herman*], Supreme Ct., N. Y. County, N. Y. L. J., March 3, 1960, p. 13, col. 5), have all been considered discontinuances of essential service.

In the case before us the evidence reveals that even after the discontinuance of the locked front door the vestibule lobby bells were still used. The tenants' protest states that tradesmen, delivery men, children, visitors and friends used the lobby bell to determine if anyone was at home or to forewarn the tenant that they were coming upstairs. It was used by United Parcel Service and mailmen to signal the apartment to determine if a tenant was at home. Children used it to notify their parents that they were home from school or that they needed assistance. The landlord claims that 30 tenants asserted that they did not consider the bells as an essential service and the fact that there was a lapse of a year and a half from its discontinuance and the time of the protest supports this view. However, these facts were before the Administrator, and in view of the afore-mentioned uses ascribed, it cannot be said as a matter of law that there was not substantial evidence to support the Rent Administrator's view that the lobby bells constituted an essential service. Nor is the case of *People ex rel. McGoldrick* v. *Regency Park* (201 Misc. 109, affd. 280 App. Div. 804) which sought to enjoin a landlord from removing a television antenna, control-

ling. It was not a review of an administrative order but an action for injunctive relief.

The foregoing determination makes it unnecessary to reach the question of whether two prior administrative holdings by the Rent Commission that lobby bells constituted essential service is *res judicata* as to present landlord.

Accordingly, the order should be reversed, on the law and the facts, and the petition dismissed.

BOTEIN, P. J., VALENTE, MCNALLY, STEVENS and STEUER, JJ., concur.

Order, entered on July 9, 1962, unanimously reversed, on the law and the facts, without costs, and the petition dismissed.